**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER; PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS; ALEXANDER DOE; MOHAMED DOE; TYSON DOE; and NINA DOE, on behalf of themselves and all others similarly situated,<br><br>     *Plaintiffs*,<br><br>    v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,<br><br>     *Defendants*. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Case No. 1:26-cv-11201-ADB |

**INTRODUCTION**

On March 13, 2026, this Court ordered Defendants to produce the Certified Administrative Record ("CAR"). *See* ECF No. 33 at 3. Defendants produced nearly 3,700 pages of reports and articles that detailed the dire country conditions in Somalia.

Defendants were required to produce "the whole record," *see* 5 U.S.C. § 706, but Defendants redacted information relevant to Plaintiffs' claims. Defendants' deficient production risks hindering the ability of this Court to decide the merits of this case. Plaintiffs accordingly seek an order compelling (i) material redacted from the produced record on inapplicable claims of the deliberative process privilege, or in the alternative, that the Court conduct an *in camera* review, and (ii) material redacted from the produced record on inapplicable claims of the law enforcement privilege, or in the alternative that Defendants produce a privilege log and/or that the Court conduct an *in camera* review.

## I.      Relevant Factual Background

On April 1, 2026, Defendants produced the CAR with certain unmarked redactions.

Defendants withheld nearly the entirety of the Decision Memorandum for the Secretary prepared by United States Citizenship and Immigration Services. Partially or entirely unredacted decision memos are generally not considered privileged, and Defendants have produced similar memos after courts have granted motions to compel in the cases concerning TPS designations for Afghanistan, Cameroon, Haiti, Honduras, Nepal, Nicaragua, Venezuela, and Syria. Ex. A. Defendants also withheld documents that appear to be related to Somali TPS applicants.

On April 8, 2026, Plaintiffs requested that Defendants produce the fully unredacted versions of the following documents contained in the CAR:

1.  The Decision Memorandum ("Decision Memo") for the Secretary prepared by United States Citizenship and Immigration Services ("USCIS"), ECF No. 42-1 at AR-000001–16 (Ex. B);

2.  An untitled chart and additional text that appears to be related to TPS applicants, ECF No. 42-1 at AR-000278 (Ex. C); and

3.  Information regarding TPS specific data, ECF No. 42-1 at AR-000290 (Ex. D).

On April 9, 2026, the parties met and conferred via videoconference to discuss the dispute. The following attorneys for the Plaintiffs attended the meet and confer: Kacey-Ann Mordecai, Lauren Carbajal, Ashley Burrell, Nargis Aslami, and Sadaf Hasan. Attorney Robert Richardson attended on behalf of the Defendants.

During the meet and confer, Plaintiffs asked Defendants the basis for the redactions in the above documents. With regard to the Decision Memo, Plaintiffs explained their position that the Decision Memo is a final document that is not subject to deliberative process privilege. Plaintiffs also explained that in similar TPS cases the equivalent document was produced without redactions.

Defendants asserted that they are not required to provide a privilege log and did not provide any basis for the redactions, citing *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2024 WL 5198705, at *10 (D. Mass. Oct. 2, 2024).

On April 14, 2026, Plaintiffs followed up via email to again request unredacted copies of the above documents and provided examples of unredacted or partially redacted decision memos that had been produced in other cases concerning TPS designations. Pls.' Apr. 14 Email, (Ex. E).

On Friday, April 17, 2026, Attorney Richardson informed Plaintiffs of the basis for the redactions. Defendants contend that the Decision Memo (Ex. B) was redacted based on the

deliberative process privilege ("DPP") and the information in both the chart (Ex. C) and data (Ex. D) are "law enforcement sensitive." Ex. E.

Plaintiffs now submit this motion to compel production of all documents. Plaintiffs ask the Court to order expedited briefing to facilitate production of these documents prior to the Court's consideration of Plaintiffs' motion to postpone the challenged agency action. Plaintiffs propose the following schedule, which was shared with Defendants on April 22, 2026:

- Plaintiffs file this motion to compel production on April 24, 2026; and

- Defendants file their response to motion on or before April 30, 2026.

Plaintiffs proposed this schedule with Defendants and Defendants opposed.

## ARGUMENT

**I.      The USCIS Decision Memo Is Not Subject to the Deliberative Process Privilege and Should be Produced.**

The USCIS Decision Memo is a document memorializing former Secretary Noem's final decision to terminate Temporary Protected Status ("TPS") and the reasons supporting this decision. *See* Mem. Op., *CASA v. Noem*, No. 25-cv-1484 (D. Md. Dec. 8, 2025), ECF No. 122 at 25 (noting "DHS specifically argued that the decisional memoranda . . . represented the final decisions on TPS terminations"). Because the USCIS Decision Memo reflects a final agency decision, the deliberative process privilege ("DPP") does not apply. *U.S. Fish & Wildlife Serv. v. Sierra Club*, 592 U.S. 261, 268 (2021) (explaining a document is final if "it communicates a policy on which the agency has settled").

To qualify for the DPP, the document must be pre-decisional and deliberative. *Id.* at 268. Pre-decisional means the "author prepared the document for the purpose of assisting the agency official charged with making the agency decision[.]" *ACLU Found., Inc. v. U.S. Dep't of Educ.*, 320 F. Supp. 3d 270, 277–78 (D. Mass. 2018). A document is deliberative if it "(i) form[s] an

essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency," and (iii) if released, would "inaccurately reflect or prematurely disclose the views of the agency." *Providence J. Co. v. U.S. Dep't of Army*, 981 F.2d 552, 559 (1st Cir. 1992) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir. 1988)) (internal quotations omitted).

Under these definitions, the redacted USCIS Decision Memo is neither pre-decisional nor deliberative. Indeed, the document suggests the exact opposite. The first page of the Decision Memo is titled "Decision." Ex. B at 1. The document ends sixteen pages later with a partially unredacted page signed by the Secretary approving the termination of TPS for Somalia. *Id.* at 16. The Secretary signed the decision memo on January 9,[1] just days before the statutory deadline for her decision. 8 U.S.C. § 1254a(b)(3)(A) (stating decision must be made sixty days before current period of TPS expires). The termination notice was subsequently published on January 14, 2026. This suggests that the memo reflects the agency's "final view" and decision on the status of Somalia's TPS designation, not the agency's "preliminary view" or "merely tentative position." *Sierra Club*, 592 U.S. at 268.

Even if a document has DPP status, it "can lose its pre-decisional character – and the protections of the privilege – if an agency adopts the document as its own." *Jud. Watch Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017); *accord Sluss v. U.S. Dep't of Just.*, No. 17-cv-00064, 2019 WL 2493447, at *4 (D.D.C. June 14, 2019) (if agency adopts "author's reasoning as its own . . . the document's pre-decisional character would cease"). When an agency approves a decision document that gives the basis for the final decision, the reasoning becomes the agency's reasoning and thus, the agency's "responsibility to defend." *NLRB v. Sears, Roebuck & Co.,* 421

---

[1] The date on AR00016 appears to read January 9, 2025. Ex. B. This appears to be inadvertent error. The index notes that the decision memo was signed on December 29, 2025. ECF No. 42-1 at 2.

U.S. 132, 161 (1975). Moreover, "the public interest in knowing the reasons for a policy actually adopted by an agency supports [disclosure]." *Id*. Here, even if the content of the Decision Memo was initially covered by DPP, the Secretary signed and adopted it as the "agency['s] position on [the] issue" of terminating TPS for Somalia. *Coastal State Gas v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). As such, the document lost any pre-decisional character it may have had.

Notably, several courts have compelled the government to disclose unredacted versions of other TPS-related decision memos. *See, e.g.*, Order on Mot. to Compel, *Dahlia Doe v. Noem*, No. 1:25-cv-08686 (S.D.N.Y. Apr. 20, 2026), ECF No. 77 at 5 (granting motion to compel and finding Secretary adopted the decision memo for Syria," "thus stripping it of its privileged status"); Order Regarding Deliberative Process Privilege & Requests for Produc., *Nat'l TPS All. v. Noem*, No. 25-cv-05687 (N.D. Cal. Sep. 5, 2025), ECF No. 107 (holding DPP did not apply to decision memos for termination of TPS for Nicaragua, Nepal and Honduras); Dec. 16, 2025 Min. Order, *Miot v. Trump*, No. 1:25-cv-02471 (D.D.C. Dec. 16, 2025) ("The Court sees no basis for the redaction of [] the [Haiti] Decision Memorandum"); Order, *CASA v. Noem*, No. 25-cv-1484 (D. Md. Apr. 2, 2026), ECF No. 143 (ordering production of mostly unredacted decision memos for Afghanistan and Cameroon); Order Regarding Deliberative Process Privilege, *Nat'l TPS All. v. Noem*, No. 25-cv-1766 (N.D. Cal. June 6, 2025), ECF No. 184 (ordering production of documents withheld under DPP, including Decision Memo); *see also* Status Report, *Miot*, No. 25-cv-2471 (D.D.C. Dec. 15, 2025), ECF Nos. 84-2; *id.* at ECF No. 84-3; *id.* at ECF No. 84-5 (collecting unredacted decision memos produced in litigation during first Trump administration).

Finally, even if the redactions cover information that qualifies as part of the pre-decisional deliberative process (Plaintiffs contend, it does not), the DPP is "not automatic," and a "showing

of necessity" may be "sufficient to outweigh the adverse effects the production would engender." *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008) (internal quotation omitted). In weighing Plaintiffs' necessity against possible adverse effects of disclosure, a Court balances:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable.

*Id.* at 40. Each of these factors weighs in favor of disclosure of the Decision Memo.

*First*, the Decision Memo, a document which contains the agency's reasoning in support of termination, is relevant to Plaintiffs' claims that the Secretary failed to conduct a good-faith, objective country-conditions review and failed to comply with the inter-agency consultation requirement set forth by 8 U.S.C. § 1254a(b)(3)(A). The agency's explanation of the factors and sources considered in the process of arriving at the Secretary's decision is necessary for Plaintiffs and the Court to assess whether the decision was made in compliance with statutory requirements.

*Second*, the Decision Memo, which explains and memorializes the reasoning behind the Secretary's decision, is the most complete record of the factors considered by the Secretary in deciding to terminate TPS for Somalia. It is unique evidence in support of Plaintiffs' claims that the periodic review and ultimate termination of Somalia's TPS designation were not statutorily or constitutionally compliant. There is no alternative document that serves this function.

*Third*, this litigation is indisputably serious. This litigation determines whether Somali TPS holders and applicants will be stripped of their status and subject to deportation to an unsafe country, confinement, and/or loss of eligibility for work authorization and various federal benefits.

*Fourth*, the government's decision-making process and the challenged policy change are at the core of this litigation. This favors disclosure. *See Texaco P.R., Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 885 (1st Cir. 1995) ("[W]here the documents sought may shed light on alleged government malfeasance, the privilege is routinely denied.") (internal citations omitted); *see also Children's First Found., Inc. v. Martinez*, No. 1:04-CV-0927, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (collecting cases holding that the deliberative process privilege was inapplicable where plaintiff alleged government defendants acted in an arbitrary manner rendering a policy decision).

*Fifth*, given that the Decision Memo was apparently approved, signed, and adopted by the Secretary, *see supra*, "the risk of chilling agency deliberations is limited because the views expressed in [the withheld document] were incorporated in the agency's justifications of the . . . decision." *New York v. Wolf*, No. 20-cv-1127, 2020 WL 3073294, at *4 (S.D.N.Y. June 10, 2020). Even if that were not the case, where other factors weigh in favor of disclosure, as they do here, "[t]he small possibility that government employees could be chilled in their internal deliberations is outweighed by the other factors." *Ciaramella v. Zucker*, No. 18 Civ. 6945, 2021 WL 4219501, at *5 (S.D.N.Y. Sept. 16, 2021). Finally, the consistent disclosure of decision memos in similar cases suggests that any further chilling effect is limited.

This Court should order Defendants to produce an unredacted version of the Decision Memo.

## II.     Defendants Have Not Asserted a Proper Basis for the Law Enforcement Privilege Regarding AR-0002780 and AR-000290.

Defendants also failed to produce unredacted copies of AR-000278 (Ex. C) and AR-000290 (Ex. D), citing "law enforcement sensitivity." Ex. E. As this Circuit has explained, law enforcement sensitivity is a "privilege [that] is appropriately invoked where disclosure might

jeopardize future government investigations." *Gulluni v. U.S. Att'y for Dist. of Mass.*, 626 F. Supp. 3d 323, 330 (D. Mass. 2022), *aff'd sub nom. Gulluni v. Levy*, 85 F.4th 76 (1st Cir. 2023). The privilege is not absolute and "is subject to balancing the federal government's interest in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure." *Id.*

As a preliminary matter, Defendants have refused to produce a privilege log. Thus, Plaintiffs cannot properly assess the government's purported basis for the law enforcement privilege.

In AR-000290 (Ex. D), a full paragraph of text appears to be redacted. Absent a privilege log, Plaintiffs cannot know whether the privilege claim for the redacted information in AR-000290 is valid.

A review of the redacted text in AR-000278 (Ex. C) alongside the unredacted text suggests that full disclosure would not reveal any law enforcement "techniques and protocols" or risk "jeopardiz[ing] future criminal investigations." *Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007). The footnote at the bottom of the AR-0000278 suggests that this document concerns information relating to Somali TPS applicants. Ex. C. The chart title for one of the three charts in the document is redacted; however, most data in the chart is unredacted. *Id.* Meanwhile, the two other charts have unredacted chart titles, but a subset of information within the charts is redacted. *Id.*

It is unclear how the redacted data related to TPS applicants could create any risk of circumvention of the law. Moreover, any potential risk of jeopardizing an investigation could be mitigated by having the documents produced under a protective order for attorneys' eyes only. *See, e.g.*, *Khairullah v. McHenry*, No. 23-30095-MGM, 2025 WL 401194, at *4 (D. Mass. Jan.

31, 2025) (explaining a "strong protective order can adequately protect against disclosure and thus preserve the privilege's underlying purpose of not publicly revealing sensitive law enforcement techniques and information").

Accordingly, this Court should order Defendants to produce unredacted copies of AR-000278 and AR-000290. In the alternative, this Court should (i) order Defendants to produce a privilege log for AR-0000278 and AR-000290 identifying additional specific facts related to their justification for the privilege and/or (ii) conduct an *in camera* review of AR-000278 and AR-0000290 to determine whether the documents are properly subject to the law enforcement privilege.

## CONCLUSION

Based on the aforementioned reasons and all other reasons that this Court deems proper, Plaintiffs request that this Court compel the production of fully unredacted versions of documents AR-000001–16, AR-000278, and AR-000290.

In the alternative, Plaintiffs ask that the Court conduct an *in camera re*view of the documents to determine whether they are properly subject to any privilege Defendants assert, and with respect to AR-000278 and AR-000290, that Defendants produce a proper privilege log.

Dated: April 24, 2026

Respectfully submitted,

| | |
|---|---|
| */s/ Nargis Aslami* | */s/ Ashley Burrell* |
| Nargis Aslami (MA Bar Number: 714848) | Ashley Burrell* |
| Melissa Keaney** | Lauren Carbajal* |
| Collin Poirot* | NAACP LEGAL DEFENSE AND |
| Abbey Rutherford* | EDUCATIONAL FUND, INC. |
| MUSLIM ADVOCATES | 40 Rector Street, 5th Floor |
| 1032 15th Street N.W. #362, | New York, NY 10006 |

10

Washington, D.C. 20005
202.897.2622
Nargis@muslimadvocates.org
Melissa@muslimadvocates.org
Collin@muslimadvocates.org
Abbey@muslimadvocates.org

*/s/ Erik Crew*
Erik Crew*
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
(949) 603-7411
ecrew@haitianbridge.org

202.965.2200
aburrell@naacpldf.org
lcarbajal@naacpldf.org


Kacey Mordecai*
Mide Odunsi*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street N.W., Suite 600
Washington, D.C. 20005
202.682.1300
kmordecai@naacpldf.org
modunsi@naacpldf.org

*Counsel for Plaintiffs*
*Admitted *pro hac vice*
** *Pro have vice* forthcoming

11