UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AFRICAN COMMUNITIES )
TOGETHER, et al., )
    *Plaintiffs*, )
     )
v. )    Case No. 26-cv-11201-ADB
     )
MARKWAYNE MULLIN, )
*in his official capacity as* )
*Secretary of Homeland Security*, )
et al. )
    *Defendants*. )

**DEFENDANTS' SECOND MOTION TO LIFT ADMINISTRATIVE STAY**

**INTRODUCTION**

The Court should dissolve the "new" administrative stay announced on Friday and effective today. The Court has now prevented the government from effectuating the termination of Somalia's TPS designation for nearly five months, without ever once concluding that the termination is likely unlawful or that Plaintiffs are otherwise entitled to preliminary relief. "By issuing such relief, the district court has effectively obviated plaintiffs' ordinary burden to obtain injunctive relief, an outcome that is all the more remarkable given the Supreme Court's rejection … of the claims asserted in this proceeding." *African Communities Together v. Mullin*, No. 26-1832 (Aug. 3, 2026) (Dunlap, J., dissenting). The "administrative stay" entered by the Court in March and continued, for the same reasons and the same indefinite duration, by the Court's latest order, is "is effectively, and impermissibly, an injunction." *Id.*

Had the Court allowed for a response before granting the plaintiffs' request for an administrative stay less than 25 hours after they filed it, the government would have explained that it is unlawful to continue to indefinitely block an important government policy nationwide, via a de facto temporary restraining order that violates Rule 65 many times over. The Court's de facto grant of interim relief has prolonged this litigation, keeping thousands of TPS holders or applicants in limbo and preventing the government from effectuating the important policy decision to terminate TPS for Somalia—a decision that was published on January 14, 2026, and should have taken effect on March 17, 2026. Throughout those months, the Court has avoided applying the factors that govern grants of interim relief; has failed to comply with Rule 65's prerequisites for granting interim relief; and has extended interim relief universally, despite the Supreme Court's prohibition on such relief. And throughout those months, the Court has nonetheless required the Executive Branch to refrain from initiating removal proceedings against thousands of individuals and instead permit them to remain in the United States with work

1

authorization, despite the Secretary of Homeland Security's  determination that Somalia's TPS designation should be terminated.

A grant of interim relief against Executive Branch officials and agencies is an extraordinary exercise of judicial power. Robust, longstanding rules govern grants of that relief in order to prevent the judiciary from overstepping its role in our system of separated powers and arrogating the Executive Branch's authority to make policy decisions. Prolonging an already-lengthy grant of interim relief, in an "enjoin first, read the briefs later" approach, would impermissibly end-run those important protections. The government is irreparably harmed by having its action serially invalidated without even so much as an evaluation of the merits.

The Court should dissolve its grant of interim relief and proceed to "rule promptly" on the pending § 705 motion. *African Communities Together v. Mullin*, No. 26-1832 (Aug. 3, 2026).

The government requests a ruling on this motion by 5 p.m. on August 4, 2026. If the Court does not dissolve the administrative stay, the government intends to return to the First Circuit to request further relief.

## BACKGROUND

On March 13, 2026, this Court entered an administrative stay pending its consideration of Plaintiffs' challenge to the termination of Somalia's TPS designation. Dkt. 33. At the time, Plaintiffs sought preliminary relief on their claims that the termination failed to comport with the Administrative Procedure Act and with constitutional equal protection principles. Dkt. 1, 3, 12.

On June 25, 2026, the Supreme Court held that non-statutory challenges to TPS terminations are not reviewable at all and that a materially similar equal-protection challenge was not likely to succeed on the merits even if reviewable. *Mullin v. Doe*, 146 S. Ct. 2121 (2026). Several members of the Court questioned, but found no need to resolve, the reviewability

of constitutional challenges to TPS terminations. *Id.* at 2137; *see also id.* at 2140-42 (Thomas, J., concurring).

On July 1, 2026, the government accordingly requested relief from the administrative stay, since Plaintiffs could not possibly succeed on their claims and there could not be any justification for maintaining interim relief in their favor. The Court denied relief from the administrative stay, instead stating that it would remain in effect "until further notice." Dkt. 78. A week and a half later, the Court set a six-week briefing schedule for supplemental briefing on the viability of Plaintiffs' claims in light of the Supreme Court's decision, with the administrative stay to remain in effect throughout that briefing schedule and through the Court's ruling at an unknown future date. Dkt. 82. The government appealed the Court's denial of the motion to lift the months-long administrative stay, and, in the alternative, sought mandamus compelling the Court to dissolve the administrative stay. *See Mullin v. African Communities Together*, No. 26-1832 (1st Cir.).

When the time came for Plaintiffs to file their first supplemental brief in defense of the claims on which they had obtained the lengthy administrative stay, Plaintiffs instead amended their complaint and filed a new motion for interim relief on newly filed claims and their previous equal protection claim. Dkt. 90, 91, 92.

In response, the Court entered an order stating that, upon issuance of the First Circuit's mandate in the government's pending appeal, the previous administrative stay would be dissolved, and a new administrative stay would be entered for precisely the same reasons as the previous administrative stay and throughout the same briefing schedule. Dkt. 94. Today, the First Circuit remanded and declined to retain jurisdiction, instructing that the Court "must rule promptly" on the § 705 motion and that "nothing in this judgment should be read to approve the

3

briefing deadlines set by" this Court. *African Communities Together v. Mullin*, No. 26-1832, slip op. at 2 (Aug. 3, 2026).

Judge Dunlap dissented, concluding that there was "no basis to issue an open-ended administrative here," given that the Court's order "effectively granted injunctive relief for an indeterminate period without any assessment of plaintiffs' entitlement to an injunction." *Id.*, slip op. at 2 (Dunlap, J., dissenting). Judge Dunlap also pointed out that the Court's latest order "effectively continues the prior stay." *Id.*, slip op. at 2 n.1. In Judge Dunlap's view, the Court has "obviated" Plaintiffs' "ordinary burden to obtain injunctive relief." *Id.*, slip op. at 3. Judge Dunlap would have granted relief because the Court's indefinite grant of interim relief "is effectively, and impermissibly, an injunction." *Id.*

## ARGUMENT

The government again requests relief from the administrative stay, which the Court again entered without permitting the government to file an opposition (in marked contrast to other interim-relief matters, where the Court has permitted both sides to file briefs on extended schedules).

Indefinitely maintaining interim relief in favor of Plaintiffs is legal error and exceeds this Court's authority. The Court captioned its order as an administrative stay, but this administrative stay functions as an injunction that indefinitely blocks the government from terminating TPS for Somalia, thereby indefinitely delaying the government's ability to implement that decision for many more months. In district courts, grants of interim relief are strictly governed by the Federal Rules of Civil Procedure. In particular, Rule 65 provides for two forms of interim relief: preliminary injunctions, and, when relief is more urgently needed, temporary restraining orders. Both forms of relief are governed by the traditional four-factor test for interim relief and can be entered only upon a statement of reasons on the record. The APA provides for interim relief

4

under 5 U.S.C. § 705, and courts have concluded that that form of relief is governed by the same four-factor test.

The Supreme Court has made clear that courts cannot issue universal preliminary injunctions or temporary restraining orders. *See Trump v. CASA, Inc.*, 606 U.S. 831 (2025). And Congress has limited the availability of relief beyond individual plaintiffs in the immigration context. *See* 8 U.S.C. § 1252(f)(1).

By entering an administrative stay scheduled to extend for weeks—if not months (again)—without ever assessing the legal merits of plaintiffs' claims or any other factors necessary to such relief, the Court's order exceeds applicable limits. Unlike administrative stays issued by *courts of appeals* to delay the effect of *district court* orders, which do have a foundation in law, *see United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring), the Court's order acts directly on an Executive Branch action—the Secretary of Homeland's Security decision to terminate Somalia's TPS designation. That means that it functions in a manner wholly indistinguishable from a temporary restraining order, preliminary injunction, or § 705 postponement. Yet it has none of the limitations (e.g., scope and duration), requirements (e.g., application of the four-factor test assessing likelihood of success on the merits and equitable factors for granting preliminary relief), or procedural protections (e.g., the statement of reasons required by Civil Rule 65(d)).

A temporary restraining order could not possibly be warranted here, because Plaintiffs' new claims are plainly meritless. *First*, Plaintiffs contend that the termination of Somalia's TPS designation is *ultra vires* and thus void because the power to terminate TPS was never transferred to the Secretary of Homeland Security and instead remains with the Attorney General.  Pl. Br. 25-31.  This claim fails at the threshold because it is non-constitutional, and the

Supreme Court has held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Doe*, 146 S. Ct. at 2137. Further, Plaintiffs' claim (at 29-30) that the review bar in § 1254a(b)(5)(A) only applies to determinations of the Attorney General is not viable when the Supreme Court has already held that the bar applies to determinations of the Secretary of Homeland Security. *Id.*  Beyond holding that there can be no judicial review of this claim, *Doe* also confirmed that "[r]esponsibility for TPS decisions rests with the Secretary." *Id.* at 2129 (citing 6 U.S.C. §§ 552(d), 557).  The TPS statute refers to the Attorney General only because the Department of Homeland Security did not exist when Congress created TPS in 1990; the Homeland Security Act of 2002, however, transferred the TPS functions to the Secretary.  *See Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009).  And even if Plaintiffs were somehow right that TPS authority was never transferred to the Secretary, that would not amount to likely success for Plaintiffs, because it would mean that the redesignations creating eligibility for the vast majority of Somali TPS beneficiaries were invalid from the start. *See Extension and Redesignation of Somalia for Temporary Protected Status*, 77 Fed. Reg. 25723, 25726 (May 1, 2012) (concluding that there were approximately 250 Somali TPS beneficiaries under pre-Homeland Security Act designation and redesignation).

*Second*, with respect to their due process claim, Plaintiffs assert liberty and property interests in their TPS status and related benefits, including employment authorization and removal protection.  Pl. Br. 6-8.  That claim fails because TPS holders have no protected liberty or property interest in a status that is temporary by statute and subject to the Secretary's discretionary judgment.  *See* 8 U.S.C. § 1254a(a)(1)(A) (providing that the Secretary "may grant" TPS to a qualifying national of a designated country); 8 C.F.R. § 244.2 ("an alien may in the discretion of the director be granted [TPS] if the alien establishes that he or she" meets the

6

eligibility criteria); *Doe*, 146 S. Ct. at 2143 (Thomas, J., concurring) ("The termination of Haiti's TPS designation does not deprive respondents of 'life, liberty, or property' . . . The discretionary and limited status that a TPS designation provides, like any immigration status for aliens, is a government-created privilege, not a core private right."); *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023) (TPS is a "discretionary form of relief"); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008) (same); *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018) ("aliens have no constitutionally-protected 'liberty or property interest' in such a discretionary grant of relief for which they are otherwise statutorily ineligible"); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018) ("the explicitly temporary nature of the [TPS] program suggests" that holders cannot establish "reliance interests").

Plaintiffs' due process claim is also plainly meritless because Plaintiffs seek to graft law governing individualized adjudications onto TPS designation decisions. That approach is foreclosed. Due process "is flexible and calls for such procedural protections as the particular situation demands," *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)), and it has long distinguished between agency action that "adjudicate[s] disputed facts in particular cases" and action involving "the formulation of a basically legislative-type judgment, for prospective application only," *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). The termination of a country's TPS designation is a determination of the latter kind: a categorical judgment about conditions in a foreign state and the national interest, applicable to an entire class of nationals, not an adjudication of any Plaintiff's particular circumstances. Plaintiffs' claim rests on the three-factor balancing

7

of *Mathews*, *see* Pl. Br. at 8-10, but that test governs individual adjudications, not "legislative-type" decisions like terminating a country's TPS designation.

*Third*, Plaintiffs' equal-protection claim is likewise meritless following the Supreme Court's decision. The Supreme Court rejected a materially indistinguishable equal-protection claim regarding Haiti's TPS designation, holding that the claim could not succeed because all the cited statements—including statements that contained "heated language," "broadly denigrate the countries for which TPS designations have been granted," "malign Haitians who have come to the United States," "expressed antipathy toward travelers from countries covered by a renewed travel ban," and made "derogatory comments about immigration and its effects"—were no basis for an equal-protection claim because they "all expressed policy views that could rest on race-neutral justifications." *Doe*, 146 S. Ct. at 2138-39. And the termination of Haiti's TPS designation and the statements had "a strong, race-neutral explanation": "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id.* at 2139. Plaintiffs identify nothing that could distinguish their claim from the claim the Supreme Court has already rejected.

An effort to tack on a "national origin" characterization of the claim fares even worse. Distinctions drawn among nationalities by the Executive are a permissible feature of immigration law and "must be upheld so long as they are not wholly irrational." *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008) (alterations and quotation marks omitted); *see Doe*, 146 S. Ct. at 2144 (Thomas, J., concurring) ("[O]ur immigration laws have distinguished among aliens based on their national origin from the beginning," and "applicants for immigration are treated differently based on their nationality as a matter of course."). Indeed, TPS designations expressly

distinguish based on national origin, and if such distinctions were unconstitutional, TPS itself would be impermissible.

Plaintiffs' claims thus provide no basis for continuing to prevent the Executive Branch from effectuating the Secretary's decision. Recognizing the weakness of these claims, another judge properly refused, after adversarial briefing, to enter even an administrative stay in favor of these claims. *Abdo Doe v. Noem*, No. 26-CV-2280 (DEH) (S.D.N.Y. July 24, 2026). Yet the Court's order would exceed the typical 14-day length of a temporary restraining order before the Court assesses the merits in even a preliminary fashion. In the meantime, the Court's order bars the government from implementing its policy, not because of the law, but solely and exclusively because of the Court's say-so.

To the extent Plaintiffs might offer the All Writs Act as an alternative source of authority for district courts to grant administrative stays that are functionally and practically indistinguishable from injunctions, that maneuver would fail. Courts cannot use the All Writs Act to accomplish an end-run around "compliance with statutory procedures," the Rules of Civil Procedure, or limitations imposed by Supreme Court precedent when the established forms appear "inconvenient or less appropriate." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). A district court may not effectively grant interim relief, lasting for months, under the guise of an administrative stay, thereby any consideration of the likelihood of success on the merits and the application of plainly controlling Supreme Court precedent.

## CONCLUSION

Accordingly, the Court should dissolve its grant of interim relief, or, at most, treat it as a temporary restraining order, promptly issue the statement of reasons required by Civil Rule 65(d), limit its applicability to the named plaintiffs as required by *CASA*, and set a specific time for its expiration as required by Civil Rule 65(b)(2).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   */s/ Robert E. Richardson*
Robert E. Richardson
Assistant United States Attorney
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3369

Dated: August 3, 2026          Robert.Richardson@usdoj.gov

## LOCAL RULE 7.1 CERTIFICATION

I, Robert E. Richardson, hereby certify that pursuant to L.R. 7.1(a)(2), I conferred with counsel for Plaintiffs in a good faith attempt to narrow or resolve the issues raised by this motion, and Plaintiffs oppose the relief requested.

*/s/ Robert E. Richardson*

Robert E. Richardson

Dated: August 3, 2026          Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Robert E. Richardson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: August 3, 2026          By:   /s/ Robert E. Richardson
Robert E. Richardson
Assistant U.S. Attorney

10