**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER; PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS; ALEXANDER DOE; MOHAMED DOE; TYSON DOE; and NINA DOE, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:26-cv-11201-ADB |
| v. | |
| MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA, | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION TO LIFT
ADMINISTRATIVE STAY**

**INTRODUCTION**

Defendants' Second Motion to Lift the Administrative Stay rests on a fundamental misconception about the nature of the relief this Court has entered. Defendants principally argue that this Court's administrative stay should be analyzed as though it were relief governed by Rule 65 or 5 U.S.C. § 705. But that premise is incorrect. An administrative stay is not a temporary restraining order, preliminary injunction, or ruling on the merits. Rather, it is a well-established procedural mechanism that allows a court to preserve the status quo while it receives the briefing necessary to resolve an emergency request for relief. *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). District courts possess inherent authority to manage their own dockets, and that is precisely what this Court has done here. Because Defendants' motion proceeds from the wrong legal framework, it fails from the outset.

This case is also in a distinct procedural posture from the government's prior appeal. Following Plaintiffs' Amended Complaint asserting new claims and their renewed emergency motion for postponement, this Court dissolved the earlier administrative stay that was the subject of the prior appeal and entered a new administrative stay based on Plaintiffs' amended pleading and renewed request for emergency relief. Order, ECF No. 94. Although Defendants mischaracterize the new administrative stay as an extension of the first, the administrative stay now at issue has only been in place for five days and serves the narrow, traditional purpose of preserving the status quo to permit briefing and argument on a motion for emergency relief. This Court has already ordered the parties to submit expedited briefing on the new claims and the Court has signaled its intent to resolve the pending motions next week. A one-week stay is nothing more than a straightforward exercise of this Court's inherent authority to manage its docket. Indeed, the government previously did not oppose a much longer stay of eight weeks to facilitate the Supreme

1

Court's decision in *Mullin v. Doe*, ECF No. 73, and proposed a briefing period that allowed each party a week to brief their arguments, ECF No. 79. The government suffers no injury from waiting a short time longer for this Court to consider new issues never raised in this case or in *Mullin*.

Defendants also devote much of their motion to arguing that Plaintiffs' new claims lack merit. Those arguments are premature: an administrative stay does not require or "typically reflect" a "consideration of the merits" or the underlying application. *United States v. Texas*, 144 S. Ct. at 798 (Barrett, J., concurring). Rather, the merit of Plaintiffs' underlying application for postponement under 5 U.S.C. § 705 is the subject of the expedited briefing schedule before this Court. Defendants will file their opposition to Plaintiffs' renewed motion today, and Plaintiffs' reply is due tomorrow. The Court should have the benefit of complete briefing to consider the merits of Plaintiffs' arguments.

Finally, Defendants repeatedly characterize the present administrative stay as "indefinite." It is nothing of the sort. This Court's revised schedule expressly anticipates issuing its decision early next week. Mem. & Order, ECF No. 98. Defendants identify no authority requiring a district court to dissolve a temporary administrative stay mere days before completing the expedited deliberative process for which such stays exist. Their motion should therefore be denied.

## BACKGROUND

Plaintiffs commenced this action on March 9, 2026, challenging Defendants' termination of Somalia's Temporary Protected Status ("TPS") designation and simultaneously moved for emergency relief postponing the Termination's effective date. Compl., ECF No. 1; Pls.' Emergency Mot. to Postpone Effective Date of Termination, ECF No. 3. Because the Termination was imminent, Defendants had not yet appeared, and the administrative record had not yet been produced, this Court entered an administrative stay on March 13, 2026, to preserve the status quo

while it received full briefing and considered Plaintiffs' request for emergency relief. Mem. & Order at 2–4, ECF No. 33. The Court emphasized that the stay would permit prompt consideration of Plaintiffs' motion following production of the administrative record and directed the parties to establish an expedited briefing schedule. *Id.* at 2–3.

The parties jointly proposed such a schedule, which the Court adopted. Joint Mot. for Briefing Schedule, ECF No. 35; Order, ECF No. 40. Five days before this Court was set to hear arguments on Plaintiffs' prior postponement motion, the Supreme Court heard argument in *Mullin v. Doe*. At the Court's request, the parties jointly agreed to stay proceedings pending the Supreme Court's decision, with Plaintiffs agreeing only on the condition that the administrative stay remain in effect. Order, ECF No. 70; Pls.' Resp. to Ct.'s Order, ECF No. 71; Defs.' Resp. to Ct.'s Order, ECF No. 72; Order, ECF No. 73. Defendants did not object.

Following the Supreme Court's decision in *Mullin*, Plaintiffs advised the Court that they intended to amend their complaint to assert additional claims in light of the decision. Joint Status Report at 2–3, ECF No. 79. The Court lifted the stay of proceedings while maintaining the administrative stay, Order, ECF No. 78, and established a supplemental briefing schedule to address Plaintiffs' new arguments. Order, ECF No. 82.

After Defendants filed an interlocutory appeal and petition for mandamus challenging the original administrative stay, Plaintiffs filed an Amended Complaint asserting new claims and a renewed emergency motion for postponement. Am. Compl., ECF No. 90; Pls.' Renewed Emergency Mot. to Postpone Effective Date of Termination, ECF No. 91 ("Pls.' Renewed Mot."). This Court dissolved the prior administrative stay and entered a new administrative stay to preserve the status quo while it considered Plaintiffs' renewed motion. Order, ECF No. 94.

On August 3, 2026, the First Circuit dismissed Defendants' interlocutory appeal and remanded the case. *Afr. Cmtys. Together v. Mullin*, No. 26-1832, 2026 WL 2224427 (1st Cir. Aug. 3, 2026). Later that same day, Defendants filed the present Second Motion to Lift the Administrative Stay, asking this Court to dissolve the newly entered administrative stay notwithstanding Plaintiffs' Amended Complaint and renewed emergency motion. Defs.' Second Mot. to Lift Admin. Stay, ECF No. 97. The following day, after considering both the First Circuit's judgment and Defendants' motion, this Court ordered expedited briefing on Defendants' motion and on Plaintiffs' renewed motion for postponement. Mem. & Order, ECF No. 98. Defendants' opposition to Plaintiffs' renewed motion and Plaintiffs' opposition to the present motion are due on August 5, Plaintiffs' reply in support of their renewed motion is due on August 6, and the Court has indicated that it anticipates issuing its decision early the following week.

## ARGUMENT

### I.   This Court has issued a duly-authorized administrative stay, not an injunction.

This Court's authority to issue an administrative stay is on solid ground based both on the All Writs Act, 28 U.S.C. § 1651, and the Court's inherent authority to manage its docket. *Texas*, 144 S. Ct. at 798 n.1 (Barrett, J., concurring*)*; *Rivera-Aponte v. Gomez Bus Line, Inc.*, 62 F.4th 1, 6 (1st Cir. 2023) (holding that district courts have "sweeping case-management authority"); *see generally Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11 (1st Cir.1985). An administrative stay "freeze[s] legal proceedings until the court can rule on a party's request for expedited relief" so as to "permit time for briefing and deliberation." *Texas*, 144 S.Ct. at 798. The "point" of an administrative stay "is to minimize harm while [a] court deliberates." *Id.* So, unlike more durable forms of preliminary relief, administrative stays "do not typically reflect the court's consideration of the merits" and a movant need not demonstrate likelihood of success on the merits

to obtain one. *Id.* Instead, they require only an initial "judgment about the relative consequences of staying" a challenged action "versus allowing it to go into effect"— which is to say, evaluating the risk of irreparable harm. *Id.*. District courts routinely exercise their authority to preserve the status quo while considering requests for emergency relief, including in circumstances similar to this case. *See Afr. Cmtys. Together v. Noem*, No. 25-CV-13939-PBS, 2025 WL 3759533 (D. Mass. Dec. 30, 2025) (Dec. 30, 2025 Memorandum and Order on Administrative Stay) (*ACT I*); *Afr. Cmtys. Together v. Noem*, 828 F. Supp. 3d 235 (D. Mass. 2026), *rev'd and remanded sub nom. Afr. Cmtys. Together v. Mullin,* No. 26-1376, 2026 WL 2185871 (1st Cir. July 29, 2026) (Jan. 26, 2026 Short Order of Notice on Administrative Stay) (*ACT II*)*; see also*, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 13, 17 (D.D.C. 2025) (issuing an administrative stay of agency action, pending receipt and consideration of the parties' expedited briefing and a hearing on the plaintiffs' request for a temporary restraining order); *Gallusz v. LLP Mortg., Inc.*, 2025 WL 1360771, at *2 (S.D. Cal. Apr. 15, 2025); *Dellinger v. Bessent*, 2025 WL 450488, at *1 (D.D.C. Feb. 10, 2025); *Richman v. United States*, 2025 WL 3505458, at *1 (D.D.C. Dec. 6, 2025).

This Court's newest administrative stay, lasting just days thus far, fits squarely within the Court's authority to maintain the status quo pending expedited briefing from the parties. Granting the government's motion would deprive this Court of the time it deemed necessary to render a considered decision on the complex issues now before it. *See* Defs.' Second Mot. to Lift Admin. Stay, ECF No. 97; ECF No. 98 ("Mot."). This administrative stay will last only until this Court has had the opportunity to review the parties' expedited briefing and issue an order on the merits. ECF No. 98. The Court has accelerated its prior briefing schedule, which matched a roughly six-

week briefing schedule jointly agreed to by the parties in March of this year,[1] and indicated its intent to reach the merits by early next week. Continuing the administrative stay pending the resolution of Plaintiffs' renewed motion is entirely within this Court's inherent authority. It also aligns with the government's own position in this case where it agreed to a stay of several months pending the Supreme Court's decision in *Mullin*. *See* ECF No. 73; *see also ACT I* (administrative stay lasting 44 days); *ACT II* (administrative stay lasting 72 days).

Defendants' brief incorrectly characterizes the current, new administrative stay as an extension of the first administrative stay, but Defendants offer no authority to support their claim other than a dissent from the First Circuit's dismissal of their appeal. Mot. at 4.  Contrary to their position, there is no "indefinite" or even "months-long" administrative stay at issue here: there is an administrative stay that has lasted days and is set to expire when the Court issues a ruling on the merits, as soon as early next week. Crucially, the current administrative stay is based on entirely different grounds than the previous stay; it was issued to "permit time for briefing and deliberation" on Plaintiffs' new claims not previously briefed or considered in this case, nor in *Mullin*. ECF No. 98 at 2 (citing *United States v. Texas*, 144 S. Ct. 797, 798 (2024)). The First Circuit effectively recognized as much in dismissing the government's appeal of the first administrative stay as moot. *Afr. Cmtys. Together v. Mullin*, No. 26-1832, 2026 WL 2224427 (1st Cir. Aug. 3, 2026). Because the prior stay has been dissolved, the government's requested relief is based on a mischaracterization of the procedural facts of this case and is therefore inappropriate.

Defendants' alternative claim that the Court's administrative stay cannot be supported as an exercise of its authority under the All Writs Act, *see* Mot. at 9, is simply a repackaging of their

---

[1] On March 18, 2026, the parties jointly proposed a briefing schedule of about six weeks and indicated availability for a hearing the week of May 4, 2026. *See* ECF No. 35. The Court approved this schedule the next day and set a hearing for May 4. *See* ECF No. 40.

6

claim that the administrative stay is operating as an injunction. Defendants argue that the Court's authority under the All Writs Act cannot be exercised in a way that violates Rule 65, and that because this administrative stay is, in their view, effectively an unlawful temporary restraining order, it is not a valid exercise of authority. But as explained above, this administrative stay is not a temporary restraining order, does it operate as such, and its issuance falls squarely within this Court's authority under the All Writs Act. None of the case law cited by Defendants is to the contrary. *Cf* Mot. at 9. Even in the case Defendants cite as support (*Pennsylvania Bureau of Correction v. U.S. Marshals Service*), the court specifically left "open the question of the availability of the All Writs Act to authorize such an order where exceptional circumstances require it." 474 U.S. 34, 43 (1985).

The current administrative stay is not effectively a temporary restraining order. Defendants' counterarguments are ineffectual; Defendants do not cite any case law contrary to maintaining the stay for a few more days.

## II. Given the administrative stay is not a TRO, Defendants' merits arguments are premature and nevertheless fail to persuade.

As explained above, this Court is well within its authority to issue an administrative stay, and Defendants' invitation to recast it as a TRO are unavailing. *See infra* Section I. For the same reason, Defendants' arguments on the merits of Plaintiffs' claims are best addressed in the context of Plaintiffs' renewed motion for postponement or an injunction (which will be fully briefed in 24 hours' time), ECF No. 98, rather than the current motion to lift the administrative stay, but, regardless, Defendants fail to show that Plaintiffs' claims are "plainly meritless," *cf.* Mot. at 5.

*First,* on Plaintiffs' Due Process claim, Defendants misread the TPS statute: once conferred, TPS status and associated benefits are not discretionary, *see, e.g.*, 8 U.S.C. §§ 1254a(a)(1)(A)–(B), 1254a(a)(4)(B) (making provision of work authorization and removal

protection mandatory once a country has been designated for TPS and an applicant makes a prima facie showing of eligibility), therefore giving rise to property and liberty interests protected by the Fifth Amendment's guarantee of procedural due process, *cf.* Mot. at 6–7. Defendants refer only to the provision of the TPS statute making the designation decision discretionary, which Plaintiffs do not dispute, but fail to confront other provisions Plaintiffs cite that create non-discretionary benefits, and thus constitutionally-protected liberty and property interests.[2] Defendants string cite largely inapplicable or non-binding case law, *see* Mot. at 7, which asserts that the initial TPS designation decision is discretionary (again, not in dispute), compares the mandatory benefits conferred to prima facie applicants with a "discretionary grant of relief" to "statutorily ineligible" beneficiaries, *see Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018), or discusses legally distinct "reliance interests" in TPS itself, *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018). These cases are inapposite and fail to refute with the weight of case law supporting Plaintiffs' procedural due process claim. *See* Pls. Br. Renewed Mot., ECF No. 92 at 6-8. Defendants also contend that procedural due process protections apply only to individualized determinations, Mot. at 7, but courts have applied such protections to determinations that affect large groups of people at once.[3] *See AARP v. Trump*, 605 U.S. 91, 98-99 (2025) (affirming order granting class-wide relief on procedural due process claim).

---

[2] Although the benefits associated with TPS are not discretionary and clearly subject to due process, even discretionary authority is not immune from due process requirements. *See, e.g. Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 166 (D. Mass. 2011) ("Grants of discretion, even broad discretion, to a decisionmaker are not inevitably dispositive of a due process claim."); *Smith v. Goodnow*, No. C83-120-L, 1983 WL 2229, at *6 (D.N.H. Sept. 26, 1983) (noting that even if a decision is discretionary, "[t]he decision to comply with the constraints of due process was not.").

[3] *See, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1164–67 (9th Cir. 2017) (procedural due process challenge to travel ban executive order); *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 283–85 (E.D.N.Y. 2018) (procedural due process challenge to DACA program rescission); *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1191–99 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016) (procedural due process challenge to Section 8 housing vouchers).

*Second*, a fact-specific "sensitive inquiry" into Defendants' discriminatory purpose shows Plaintiffs have submitted ample evidence that discriminatory intent based on race and national origin was a motivating factor in the decision to terminate Somalia's TPS designation. *See* Pls. Br. Renewed Mot., ECF No. 92 at 10-24.  President Trump and Defendants' overt statements rely on racial stereotypes of Somali people as violent criminals and animals who "prey" on people, *id.* at 10-17, and a wealth of circumstantial evidence indicates Defendants singled out Somali people (and only Somali people) for expulsion from the country based on their race and national origin, *id.* at 18-24. The record in this case cannot be explained away as reflecting "policy views that could rest on race-neutral justifications," *cf.* Mot. at 8 (citing *Mullin v. Doe*, 146 S. Ct. at 2138–39). And while *distinctions* based on nationality may be permissible in the context of immigration, *see* Mot. at 8–9, *discrimination* against a group already in the country based on their nationality simply is not. *See Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1, 8–9 (1st Cir. 2012) (stating national origin is a suspect classification subject to strict scrutiny.); Pls. Br. Renewed Mot., ECF No. 92 at 10-24.

*Finally*, Plaintiffs' ultra vires claim is reviewable because the question of whether the Attorney General—and not the DHS Secretary—has the authority to terminate Somalia's TPS designation was not before the Supreme Court in *Mullin v. Doe* and was not foreclosed by the Court's opinion in that case. *See* 146 S.Ct. 2121 (2026). Indeed, courts reviewing agency action must determine that "the particular official acting on behalf of the agency [was] delegated the authority to act; otherwise such agency action is invalid." *League of Women Voters of U.S. v. Newby*, 238 F. Supp. 3d 6, 11 (D.D.C. 2017) (quoting *Am. Vanguard Corp. v. Jackson*, 803 F. Supp. 2d 8, 12 (D.D.C. 2011)).

By its plain text, the TPS statute's judicial review bar applies only to TPS "determination[s] by the Attorney General," 8 U.S.C. § 1254a(b)(5)(A) (emphasis added); *cf.* Mot at 5–6. In *Mullin*, the Supreme Court's analysis focused on two arguments for which the government sought review: (1) that the judicial review bar applies only to substantive claims, not procedural errors; and (2) that the word "determination" refers only to determinations about conditions in a country designated for TPS. *See Mullin v. Doe*, 146 S. Ct. at 2133–37. But Plaintiffs' *ultra vires* claim does not challenge the TPS determination made for Somalia as such: it challenges the Secretary's statutory authority to make any determination at all. Because Plaintiffs' claim was not presented to or considered by the Supreme Court, the *Mullin* decision is subject to the principle that "[q]uestions that merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

On the merits of Plaintiffs' *ultra vires* claim, Defendants hardly put up a fight: merely stating without support that the "Homeland Security Act of 2002…transferred the TPS functions to the Secretary." *See* Mot. at 6. But that bald assertion is incorrect for the reasons Plaintiffs laid out in their opening motion, *see* Pls. Br. Renewed Mot., ECF No. 92 at 26-29, and Defendants have the burden to "identify the statutory authority" for the action they have purported to take, *Nat'l Ass'n of Broadcasters v. FCC*, 39 F.4th 817, 819 (D.C. Cir. 2022).[4]

---

[4] Defendants also err in claiming that even if Plaintiffs are correct on the merits of their ultra vires claim, it would not amount to success, *cf.* Mot. at 6, because Plaintiffs challenge only the TPS *termination* decision for Somalia, thus any challenge to past redesignations of Somalia's TPS status is not before the Court, and any future rescission of TPS status for Somali TPS holders on the basis that the TPS redesignation was unlawful would constitute final agency action subject to the APA and the constitutional requirements of the Due Process Clause of the Fifth Amendment.

Defendants fail to show that Plaintiffs' claims supporting postponement lack merit and regardless, the Court should reserve assessment of the merits of Plaintiffs' claims in the context of Plaintiffs' motion for postponement, which will be fully briefed in a mere 24 hours.

### III.     The administrative stay is necessary to prevent irreparable harm.

Defendants do not meaningfully dispute that Plaintiffs will be irreparably harmed if the Court were to lift the administrative stay pending consideration of Plaintiffs' renewed motion for postponement or an injunction. Nor could they because the record is crystal clear. If the administrative stay is lifted, Plaintiffs and other Somali TPS beneficiaries may become subject to detention and removal proceedings and lose employment authorization, state identification and driving privileges dependent on lawful status, as well as the ability to support themselves and their families. *See, e.g.*, ECF No. 2-3 (Decl. of Pl. Mohamed Doe). Many will suffer consequences from a lapse in lawful status that may not be fully repaired through a later judgment in their favor. *See, e.g.*, 8 U.S.C. § 1255(c)(2). These injuries are per se irreparable as this Court has essentially recognized. *See* ECF No. 98. Against this backdrop, the government's cry of irreparable harm resulting from an administrative stay of limited duration to permit the Court to assess and rule on Plaintiffs' pending motion ring particularly hollow when Defendants did not object to a stay enduring for nearly eight weeks prior to the Supreme Court's decision.

## CONCLUSION

The Court should deny Defendants' request to lift the administrative stay or treat it as a temporary restraining order.

Dated: August 5, 2026     Respectfully submitted,

*Admitted *pro hac vice*    /s/ *Melissa Keaney*
            Melissa Keaney*
            Nargis Aslami (MA Bar Number: 714848)
            Sadaf Hasan*
            Collin Poirot*
            Abbey Rutherford*
            MUSLIM ADVOCATES
            1032 15th Street N.W. #362,
            Washington, D.C. 20005
            202.897.2622
            Melissa@muslimadvocates.org
            Nargis@muslimadvocates.org
            Sadaf@muslimadvocates.org
            Collin@muslimadvocates.org
            Abbey@muslimadvocates.org

            /s/ *Erik Crew*
            Erik Crew*
            HAITIAN BRIDGE ALLIANCE
            4560 Alvarado Canyon Road, Suite 1H
            San Diego, CA 92120
            949.603.7411
            ecrew@haitianbridge.org

            /s/*Kacey Mordecai*
            Kacey Mordecai*
            Mide Odunsi*
            LEGAL DEFENSE FUND
            700 14th Street N.W. Suite 600
            Washington, D.C. 20005
            202.682.1300
            Kmordecai@naacpldf.org
            Modunsi@naacpldf.org

            Ashley Burrell*
            Lauren Carbajal*
            LEGAL DEFENSE FUND
            40 Rector Street #5
            New York, NY 10006
            202.965.2200
            aburrell@naacpldf.org
            lcarbajal@naacpldf.org

            *Counsel for Plaintiffs*

12

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


 */s/ Melissa Keaney*

13