**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AFRICAN COMMUNITIES TOGETHER, PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS, ALEXANDER DOE, MOHAMED DOE, TYSON DOE, and NINA DOE, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and the UNITED STATES OF AMERICA,

*Defendants*.

Case No. 1:26-cv-11201-ADB

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 8

ARGUMENT ..... 8

I. The Proposed Classes Satisfy Rule 23(a). ..... 10

A. The Proposed Classes Are Sufficiently Numerous. ..... 10

B. The Proposed Classes Present Common Questions of Law or Fact. ..... 10

C. Plaintiffs' Claims Are Typical of the Claims of the Members of the Proposed Classes. ..... 13

D. Plaintiffs Will Adequately Represent the Interests of the Proposed Classes and Plaintiffs' Counsel Are Qualified to Litigate This Action. ..... 15

II. The Proposed Classes Meet the Requirements of Rule 23(b)(2). ..... 18

III. This Court Should Appoint Plaintiffs' Attorneys as Class Counsel. ..... 20

CONCLUSION ..... 20

CERTIFICATE OF SERVICE ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) .......... 8, 15, 17

*Barbara v. Trump*,
790 F. Supp. 3d 80 (D.N.H. 2025) .......... 11

*Brito v. Barr*,
395 F. Supp. 3d 135 (D. Mass. 2019) .......... 13, 16

*Brito v. Garland*,
22 F.4th 240 (1st Cir. 2021) .......... 19

*CASA, Inc. v. Noem*,
792 F. Supp. 3d 576 (D. Md. 2025) .......... 19

*Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*,
585 F.3d 33 (1st Cir. 2009) .......... 16

*Connor B. ex rel. Vigurs v. Patrick*,
272 F.R.D. 288 (D. Mass. 2011) .......... 13, 14

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
778 F. Supp. 3d 355 (D. Mass. 2025) .......... 9

*DaSilva v. Border Transfer of MA, Inc.*,
296 F. Supp. 3d 389 (D. Mass. 2017) .......... 14

*Diggs v. Mici*,
No. 22-cv-40003, 2024 WL 4425654 (D. Mass. Sep. 30, 2024) .......... 8

*Doe v. Noem*,
778 F. Supp. 3d 311 (D. Mass. 2025) .......... 15

*Doe v. Noem*,
784 F. Supp. 3d 437 (D. Mass. 2025) .......... 9, 12

*Fleming v. Select Portfolio Servicing*,
342 F.R.D. 361 (D. Mass. 2022) .......... 10, 17

*García-Rubiera v. Calderón*,
570 F.3d 443 (1st Cir. 2009) .......... 10, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 137 (1982) .......... 13

*Gordon v. Johnson*,
300 F.R.D. 31 (D. Mass. 2014) .......... 12, 16, 17, 19

*Guerrero Orellana v. Moniz*,
808 F. Supp. 3d 167 (D. Mass. 2025) .......... *passim*

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008) .......... 8, 10

*Mansor v. USCIS*,
345 F.R.D. 193 (W.D. Wash. 2023) .......... 9

*Matamoros v. Starbucks Corp.*,
699 F.3d 129 (1st Cir. 2012) .......... 15

*McDonald v. Heckler*,
612 F. Supp. 293 (D. Mass. 1985) .......... 19

*McLaughlin v. Liberty Mut. Ins. Co.*,
224 F.R.D. 304 (D. Mass. 2004) .......... 10

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) .......... 7

*Nat'l Ass'n of Deaf v. Harvard Univ.*,
No. 3:15-cv-30023, 2019 WL 6699449 (D. Mass. Dec. 9, 2019) .......... 16

*Nat'l TPS All. v. Noem*,
830 F. Supp. 3d 939 (N.D. Cal. 2025) .......... 9, 19

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
247 F.R.D. 253 (D. Mass. 2008) .......... 11

*Ouadani v. Dynamex Operations E., LLC*,
405 F. Supp. 3d 149 (D. Mass. 2019) .......... 17

*Parent/Pro. Advoc. League v. City of Springfield*,
934 F.3d 13 (1st Cir. 2019) .......... 11

*Quadrelli v. Moniz*,
No. 20-cv-10685-ADB, 2020 WL 3051778 (D. Mass. June 8, 2020) .......... 13

*Reid v. Donelan*,
297 F.R.D. 185 (D. Mass. 2014) .......... *passim*

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003) ........ 8

*Tassinari v. Salvation Army*,
349 F.R.D. 10 (D. Mass. 2025) ........ 8

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) ........ 19

*Torrezani v. VIP Auto Detailing, Inc.*,
318 F.R.D. 548 (D. Mass. 2017) ........ 10

*Vara v. DeVos*,
No. 19-cv-12175, 2020 WL 3489679 (D. Mass. June 25, 2020) ........ 12, 14, 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 11, 18, 19

*Westcott v. Califano*,
460 F. Supp. 737 (D. Mass. 1978) ........ 12, 17

**Other Authorities**

1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:7 (6th ed. 2026)........ 8

Fed. R. Civ. P. 23(a)(4) ........ 15

Fed. R. Civ. P. 23(b)(2) ........ 8, 18

Fed. R. Civ. P. 23(g) ........ 20

Termination of the Designation of Somalia for Temporary Protected Status,
91 Fed. Reg. 1547 (Jan. 14, 2026) ........ 10

## INTRODUCTION

Plaintiffs are three Somali individuals who had Temporary Protected Status ("TPS"), one Somali individual who had a pending application for TPS (together, the "Individual Plaintiffs"), and two associations whose membership includes Somali individuals who had TPS or pending applications for TPS ("Associational Plaintiffs"). They and the classes they seek to represent have suffered the loss of their TPS and its attendant benefits and are at risk of immigrant detention, deportation, and forced separation from their loved ones and communities due to Defendants' termination of Somalia's TPS designation ("the Termination").

Plaintiffs challenge the termination of Somalia's TPS designation as violative of the Due Process Clause and the Equal Protection component of the Fifth Amendment to the U.S. Constitution and *ultra vires* under the Administrative Procedure Act ("APA"). First, Plaintiffs and the classes they seek to represent have protected property and liberty interests conferred by the TPS statute that were terminated without constitutionally adequate process. Second, the Termination was motivated by racial and national origin discrimination against Somalis. Lastly, the TPS statute authorizes only the Attorney General—not the Secretary of Homeland Security—to terminate a TPS designation.

The termination of Somalia's TPS designation affects all individuals who (1) received and maintained active TPS pursuant to Somalia's designation or (2) who applied and had a pending application for Somali TPS reflecting prima facie eligibility for TPS at the time of the Termination's effective date. Plaintiffs request that the Court certify the following two classes:

1. All nationals of Somalia or individuals without any nationality who last habitually resided in Somalia who were present in the United States and were active recipients or holders of TPS for Somalia at the time of the termination of Somalia's TPS designation (hereinafter the "Recipient Class"); and

2. All nationals of Somalia or individuals without any nationality who last habitually resided in Somalia who were present in the United States and had pending applications for TPS for Somalia that reflected their prima facie eligibility for it at the time of the termination of Somalia's TPS designation (hereinafter the "Applicant Class").

Both the proposed classes satisfy each of the Rule 23 class certification requirements. Each proposed class numbers well over 1,000 individuals, satisfying the numerosity requirement. The constitutional and statutory interpretation questions are common to both proposed classes and would yield common answers. Plaintiffs' claims and those of the proposed class members arise out of the same government action and legal theories, thus rendering Plaintiffs' claims typical of the proposed classes. Plaintiffs will fairly and adequately protect the interests of the classes and have no conflicts with absent class members and Plaintiffs' counsel are well qualified to conduct this litigation. Finally, because the Termination applies generally to the classes as a whole and any final relief would apply to the classes as a whole, Rule 23(b)(2) is satisfied. Accordingly, this Court should grant class certification, appoint the named Plaintiffs as class representatives, and appoint the undersigned as Class Counsel.

## BACKGROUND

### I. Somalia's Temporary Protected Status Designation

The TPS program and TPS for Somalia have been the subject of multiple rounds of briefing, therefore Plaintiffs assume the Court's familiarity with the relevant factual background. The termination of Somalia's TPS designation went into effect on August 14, 2026, following this Court's order denying Plaintiffs' motion for interim relief and lifting the administrative stay of the Termination. Dkt. No. 109.

## II. Individual and Associational Plaintiffs

Plaintiff **Alexander Doe** is a Black man and Somali national in his twenties who has lived in the United States for four years and submitted an application for TPS reflecting his prima facie eligibility nearly two years ago. Alexander has never been arrested, has no criminal convictions, and met every other eligibility requirement for TPS. Prior to the Termination, Alexander worked as an instructional aide at a school where he helped educate almost 600 students from pre-K through eighth grade. Because he has a pending asylum application, Alexander has been able to continue working for now. Alexander is currently enrolled in a four-year degree program and ultimately seeks to earn a professional degree in counseling. He has built a strong community in the United States for himself through school, work, and regular engagement with his local mosques. He has a close relationship with a U.S. citizen cousin, who he views more as a sibling than a cousin. Since the Termination, Alexander has limited his movements out of fear of being targeted by immigration officials given the rampant enforcement actions taking place in his neighborhood targeting Black immigrants—including two Somali community members. Alexander has lost his sole immigration status because of the Termination and, if his asylum application is denied, his educational goals will be in jeopardy and he will be at imminent risk of being forcibly separated from his family and community. He fears for his physical safety if he is forced to return to Somalia. *See generally* Alexander Doe Decl., Ex. 1.

Plaintiff **Mohamed Doe** is a Black man and Somali national in his thirties who has lived in the United States for years and had active TPS for three years prior to the Termination's effective date. Prior to the Termination, Mohamed worked as a teacher, mentored students, and coached soccer and wrestling. He hoped to attend graduate school to become a better educator. He has developed a strong community through his work and local mosque, where he often volunteers. When the Termination went into effect, Mohamed immediately lost his job and his employer-

provided housing. Mohamed and his wife, who has lawful status, just recently had their first U.S. citizen child. He and his family are facing financial strain due to the loss of Mohamed's job, and he is no longer able to provide financial support to his mother, father, and younger siblings abroad. Although Mohamed has a pending immigration application based on his wife's visa, he has lost his sole immigration status due to the Termination. Since the Termination, Mohamed has limited his movements out of fear of being targeted by immigration officials. Because he lost his TPS, if his immigration application is denied, Mohamed will be forcibly separated from his wife and five-month-old baby and would be at risk of being forcibly return to Somalia, where he fears he would be in danger and unable to access basic necessities. *See generally* Mohamed Doe Decl., Ex. 2.

Plaintiff **Tyson Doe** is a Black man and Somali national in his twenties who has lived in the United States for nearly a decade and had active TPS prior to the Termination's effective date. Prior to the Termination, Tyson worked as an elementary school teacher in an underserved area experiencing a shortage of teachers. He hoped to attend graduate school in the United States to receive a master's degree in education, which would have allowed him to progress in his career and make a bigger impact on his students' education. Tyson lost his teaching job due to the termination of Somalia's TPS, but because he has employment authorization associated with a pending asylum application, Tyson was able to secure another job teaching at an elementary school. Tyson has built a deep community with his students, fellow teachers, and the local mosque where he volunteers. He has many loved ones in the U.S., including a U.S. citizen sibling with whom he is very close. Tyson has been providing full financial support to his younger siblings abroad. Tyson has lost his sole immigration status due to the Termination and, if his asylum application is denied, he will be forced to abandon his students, interrupting their academic process, and would be at immediate risk of being separated from his family and community. He fears returning to Somalia

where he would be under constant threat of violence, exposed to diseases, subject to food scarcity, and unable to access clean water. *See generally* Tyson Doe Decl., Ex. 3.

Plaintiff **Nina Doe** is a Black woman and Somali national in her twenties who has lived in the United States for years and had active TPS prior to the Termination's effective date. Nina lived with a host family when she first arrived in the United States to attend high school—she maintains contact with them to this day and considers them family. After finishing high school, Nina went on to receive a college degree and teach at an elementary school. She has developed a strong community for herself in the United States through her students, host family, classmates from college, close friends, family, and volunteering at her local mosque. Nina lives with her two siblings and has a U.S. citizen cousin whom she supports and maintains regular contact with. Nina has lost her sole immigration status due to the termination of Somalia's TPS designation and has only a pending application for asylum. If her application is denied, Nina would be at risk of being forcibly separated from her siblings and community. Nina has barely left her house out of fear of being targeted by immigration officials, particularly because she has seen increased immigration enforcement in her neighborhood targeting Somalis. If she returns to Somalia, Nina fears she will be in physical danger and potentially subjected to gender-based and sexual violence, which is a widespread issue in the country. *See generally* Nina Doe Decl., Ex. 4.

Plaintiff **African Communities Together ("ACT")** is a non-profit, membership-based organization that fights for civil rights, opportunity, and a better life for African immigrants, their families, and their communities across the United States. ACT has thousands of members nationwide, including members who were TPS holders and/or applicants from Somalia. ACT develops and engages in policy and advocacy campaigns that call for the designation, redesignation, and extension of TPS for African countries facing unsafe conditions, including

Somalia. In addition to policy efforts, ACT is a plaintiff in three active TPS-related lawsuits and supports its members who serve as individual plaintiffs in these cases. ACT's members, including the Individual Plaintiffs, have faced myriad harms from the Termination including job loss, risk of forced separation from loved ones and communities, and risk of grave harm if forcibly removed to Somalia or a third country. ACT's members have reported increased immigration enforcement in their neighborhoods targeting Somali and Black immigrants after the Termination took effect in August. *See generally* Kassa Decl., Ex. 5.

Plaintiff **Partnership for the Advancement of New Americans ("PANA")** is a non-profit, membership-based organization of refugees and displaced people with a focus on African, Middle Eastern, Muslim, and South Asian communities. PANA has more than 400 members, including members who were Somali TPS holders and/or applicants. PANA advocates for the full economic, social, and civic inclusion of its membership by engaging in public policy advocacy that addresses systemic barriers to such inclusion and by providing direct legal services and community support services to its membership. PANA is involved in efforts to preserve, defend, and expand TPS designations and related benefits. PANA's members have faced a myriad of harms from the termination of Somalia's TPS designation—including the stress and torment of possible forced separation and fear that the applicants and recipients could face grave harm, such as death, if forcibly removed to Somalia or a third country. PANA's members have reported increased immigration enforcement in their neighborhoods since the Termination took effect. *See generally* Sahid Decl., Ex. 6.

## III. Procedural History

Plaintiffs filed this lawsuit on March 9, 2026, to prevent the Termination from taking effect on March 17, 2026. Dkt. No. 1. This Court issued an administrative stay of the Termination on March 13, 2026. Dkt. No. 33. After the Parties jointly agreed, on May 1, this Court stayed

proceedings, Dkt. No. 73, pending the Supreme Court's decision in *Mullin v. Doe*, which was issued on June 25, 2026, *Mullin v. Doe*, 146 S. Ct. 2121 (2026). On July 1, 2026, Defendants filed a motion to lift the abeyance and the administrative stay. Dkt. No. 77. The next day, this Court lifted the abeyance but declined to lift the administrative stay. Dkt. No. 78. The Parties submitted a joint status report on July 9, 2026, stating their positions on the impact of *Mullin* and proposing briefing schedules. Dkt. No. 79. This Court entered a scheduling order for supplemental briefing on July 13, 2026. Dkt. No. 82.

Defendants filed a notice of appeal on July 20, 2026, Dkt. No. 84, seeking summary reversal and vacatur of this Court's order, or in the alternative, a writ of mandamus directing this Court to dissolve the administrative stay, Defs.' Mot. Summ. Reversal & Alternative Mandamus Pet., *Afr. Cmtys. Together v. Mullin*, No. 26-1832 (1st Cir. July 21, 2026). While the Parties were briefing Defendants' appeal, this Court granted in part and denied in part Plaintiffs' motion to compel and ordered Defendants to file an unredacted copy of the Secretary's Decision Memorandum. Dkt. No. 86. On July 30, 2026, Plaintiffs filed an amended complaint asserting three new legal claims, Dkt. No. 90, accompanied by a renewed motion for postponement and preliminary injunction, Dkt. Nos. 91, 92. The next day, this Court issued an indicative ruling stating it would dissolve the March 13 administrative stay order and would issue a new administrative stay order pending this Court's decision on Plaintiffs' renewed motion. Dkt. No. 94. Accordingly, the First Circuit dismissed the pending appeal and remanded for further proceedings. Dkt. No. 95.

On August 3, 2026, Defendants filed a motion to lift the new administrative stay. Dkt. No. 97. The next day, this Court issued an order directing Plaintiffs to respond to Defendants' motion and issuing an expedited supplemental briefing schedule. Dkt. No. 98. On August 13, 2026,

Defendants filed a third motion to lift the administrative stay. Dkt. No. 108. This Court issued its decision denying Plaintiffs' motion for relief and lifting the administrative stay on August 14, 2026. Dkt. No. 109. Plaintiffs filed a notice of appeal that same day. Dkt. No. 110. On August 24, 2026, this Court granted Plaintiffs' motion seeking leave to proceed under pseudonyms. Dkt. No. 114. On September 14, 2026, Defendants filed a motion to dismiss. Dkt. No. 117.

## LEGAL STANDARD

"District courts have broad discretion concerning issues of class certification." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Class certification requires that the moving party "establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). "Rule 23(a) requires that (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 18 (1st Cir. 2008).[1] Rule 23(b)(2) applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## ARGUMENT

Plaintiffs clearly establish the elements of Rule 23(a): (1) the proposed classes are sufficiently numerous, composed of 2,465 individuals altogether; (2) the questions of law—

[1] Ascertainability is not required in the First Circuit where classes seek certification pursuant to Rule 23(b)(2). *Tassinari v. Salvation Army*, 349 F.R.D. 10, 32 n.17 (D. Mass. 2025) ("This implied ascertainability requirement does not apply to classes seeking injunctive relief under Rule 23(b)(2)."); *Diggs v. Mici*, No. 22-cv-40003, 2024 WL 4425654, at *3 n.1 (D. Mass. Sep. 30, 2024) ("Ascertainability does not apply to classes seeking injunctive or declaratory relief under Rule 23(b)(2)."); 1 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:7 (6th ed. 2026) ("The First . . . Circuit[] hold[s] that plaintiffs in Rule 23(b)(2) class actions need not show that a definite class exists."). Even if ascertainability were required, it is easily satisfied here because Defendants have records of all Somali nationals who held or applied for TPS.

whether the Termination was *ultra vires* under the APA and violated the Fifth Amendment to the U.S. Constitution—are common across the classes and would yield common answers; (3) Plaintiffs face the same injuries as the absent class members and their claims arise out of the same conduct and same legal theories as those of the proposed class; and (4) Plaintiffs will adequately and fairly represent the proposed classes and have no conflict of interest with the absent class members, and Plaintiffs' counsel are qualified, experienced in class actions and the subject matter, and are able to vigorously conduct this litigation. Finally, because Plaintiffs seek injunctive and declaratory relief to redress a group-wide injury, Rule 23(b)(2) certification is appropriate.

Moreover, this case involves a challenge to immigration policy, which courts both within and outside of the First Circuit have routinely viewed as satisfying the elements of Rule 23. *See, e.g.*, *Guerrero Orellana v. Moniz*, 808 F. Supp. 3d 167 (D. Mass. 2025) (class certified in challenge to mandatory detention policy); *Doe v. Noem*, 784 F. Supp. 3d 437 (D. Mass. 2025), *appeal dismissed*, No. 25-1715, 2025 WL 4666067 (1st Cir. Nov. 5, 2025) (class certified in challenge to various agency memoranda and policies pertaining to parole programs and applications for other immigration benefits); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025), *opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1323697 (D. Mass. May 7, 2025), *and opinion clarified*, No. CV 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied*, 786 F. Supp. 3d 223 (D. Mass. 2025), *and appeal dismissed and remanded*, No. 25-1393, 2026 WL 1102937 (1st Cir. Feb. 20, 2026) (certifying class action for challenge to third country removal policy); *Nat'l TPS All. v. Noem*, 830 F. Supp. 3d 939 (N.D. Cal. 2025) (certifying class action in lawsuit challenging termination of TPS for Nepal, Honduras, and Nicaragua); *Mansor v. USCIS*, 345 F.R.D. 193 (W.D. Wash. 2023) (class certification for TPS

applicants with prima facie eligibility in lawsuit challenging government's failure to provide temporary work authorization).

## I. The Proposed Classes Satisfy Rule 23(a).

### *A. The Proposed Classes Are Sufficiently Numerous.*

Numerosity is a "low threshold." *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* at 460 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)); *see also Fleming v. Select Portfolio Servicing*, 342 F.R.D. 361, 365 (D. Mass. 2022).

Both proposed classes easily satisfy this threshold. The Recipient Class consists of an estimated 1,082 individuals and the Applicant Class consists of an estimated 1,383 individuals. Termination of the Designation of Somalia for Temporary Protected Status, 91 Fed. Reg. 1547, 1552 (Jan. 14, 2026). Moreover, joinder is impracticable where, as here, there is a lack of geographical concentration and a fear of retaliation among class members, *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 308 (D. Mass. 2004), class members face language barriers and are unable to secure counsel, *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014), and class members have financial constraints, *Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 554 (D. Mass. 2017).

### *B. The Proposed Classes Present Common Questions of Law or Fact.*

"Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" *Canadian Exp. Antitrust Litig.*, 522 F.3d at 19 (quoting 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1763, at 221 (3d ed. 2005)). Only a single common issue is required. *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253,

264 (D. Mass. 2008). The plaintiff's claims "must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, "what really 'matters to class certification . . . is not the raising of common "questions"' as much as 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) (quoting *Wal-Mart Stores*, 564 U.S. at 350). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 137, 157 (1982)).

Here, Plaintiffs' claims raise factual issues common to the proposed classes because the proposed class members have all suffered the same injury as the Individual Plaintiffs and members of the Associational Plaintiffs: the loss of their TPS status or their ability to seek it, along with the benefits guaranteed by TPS status or a showing of prima facie eligibility for such status, such as eligibility for work authorization. *See Barbara v. Trump*, 790 F. Supp. 3d 80, 93 (D.N.H. 2025), *aff'd*, 146 S. Ct. 2438 (2026) (recognizing "the denial of citizenship and its associated benefits" as a "common factual connection" among proposed class members). These losses subject Plaintiffs and the proposed class members to myriad harms, including job loss, risk of immigration enforcement, and forced separation from loved ones and communities. *See* Alexander Doe Decl., Ex. 1 ¶¶ 22–23, 26, 32–36; Mohamed Doe Decl., Ex. 2 ¶¶ 4–6, 8–14, 22–23; Tyson Doe Decl., Ex. 3 ¶¶ 3–4, 8, 10, 15–16, 19; Nina Doe Decl., Ex. 4 ¶¶ 3–4, 15–18.

Plaintiffs' claims also raise common questions of law shared by the proposed class members: (1) did the Termination provide constitutionally adequate process for the property and

liberty interests TPS status and benefits confer, as required by the Due Process Clause of the Fifth Amendment; (2) was Defendants' decision to terminate Somalia's TPS designation unconstitutional because it was impermissibly motivated by discriminatory intent or animus based on race and national origin; and (3) whether the Termination was *ultra vires* because the Attorney General, not the Secretary of Homeland Security, has the sole statutory authority to terminate a TPS designation. Am. Compl. ¶¶ 254–257, Dkt. No. 90. None of these questions of law involve facts specific to any class member. Because these common questions of law can "be answered either 'yes' or 'no' for the entire class and the answers will not vary by individual class member," Plaintiffs have established commonality. *Vara v. DeVos*, No. 19-cv-12175, 2020 WL 3489679, at *15 (D. Mass. June 25, 2020). *See, e.g.*, *Doe*, 784 F. Supp. 3d at 468–69 (finding commonality satisfied because the question of whether a policy was lawfully issued would resolve, on a class-wide basis, the issue of whether the effects of that policy were proper or lawful).

Indeed, the fact that Plaintiffs' *ultra vires* claim "presents a single question of statutory interpretation" "alone creates a common question of law sufficient to satisfy Rule 23." *Gordon v. Johnson*, 300 F.R.D. 31, 37 (D. Mass. 2014), *vacated on other grounds sub nom. Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016); *see also Guerrero Orellana*, 808 F. Supp. 3d at 185 ("Addressing whether [an] interpretation of [a] statutory provision is correct is a common legal question that binds the class together."). Moreover, Plaintiffs raise two constitutional claims sounding in the Fifth Amendment's guarantees of due process and equal protection—this Court has found that questions of constitutionality satisfy the commonality requirement. *See, e.g.*, *Westcott v. Califano*, 460 F. Supp. 737, 745 (D. Mass. 1978), *aff'd*, 443 U.S. 76 (1979) ("the question of law common to the class is whether the defendants have violated the class members' rights to equal protection guaranteed by the . . . Federal Constitution"); *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288,

295 (D. Mass. 2011) (commonality satisfied by allegations that challenged action exposed class to violation of their constitutional rights).

That there may be underlying factual differences among class members regarding their individual circumstances, including whether alternative forms of immigration status may be available to them, does not defeat Plaintiffs' showing of commonality because such differences "have no bearing" on the questions of law presented. *Guerrero Orellana*, 808 F. Supp. 3d at 185; *see also, e.g.*, *Quadrelli v. Moniz*, No. 20-cv-10685-ADB, 2020 WL 3051778, at *5 (D. Mass. June 8, 2020) ("Other courts have certified classes of inmates who have alleged a general risk of harm due to a policy or practice, even if there might additionally be a unique or distinct impact as to an individual putative class member."); *Donelan*, 297 F.R.D. at 190 (finding that question of due process right to argue for release on bail "is one purely of law, resolvable irrespective of" factual differences in criminal histories across the class); *Brito v. Barr*, 395 F. Supp. 3d 135, 148 (D. Mass. 2019), *modified*, 415 F. Supp. 3d 258 (D. Mass. 2019), *aff'd in part, vacated in part, remanded sub nom. Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) ("the need to answer a question of prejudice on an individual basis would not by itself defeat commonality").

### *C. Plaintiffs' Claims Are Typical of the Claims of the Members of the Proposed Classes.*

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13. Typicality is established when "Plaintiffs' claims 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory.'" *García-Rubiera*, 570 F.3d at 460 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). *See, e.g.*, *Brito*, 395 F. Supp. 3d at 148 ("Since all class members challenge detention pursuant to the same statutory authority and set of procedural rules and seek the same relief, the claims of the named plaintiffs are typical of those of the rest of the

class."); *Guerrero Orellana*, 808 F. Supp. 3d at 186 (typicality established where plaintiff's claims and those of absent class members arose from the same governmental policy and were based on same statutory argument). "The claims of the entire class need not be identical." *Connor B.*, 272 F.R.D. at 296. Thus, factual differences among class members do not preclude typicality where the injuries and legal theories are common to all class members. *See, e.g.*, *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 405 (D. Mass. 2017) ("Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."); *Vara*, 2020 WL 3489679, at *17 ("[T]hese dissimilarities have no bearing on class certification. . . . Even if some proposed class members have pending individual [borrower defense] applications that separately entitle them to relief, this additional entitlement in no way vitiates any entitlement that they may enjoy with respect to the [Defense to Repayment] Application.").

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Guerrero Orellana*, 808 F. Supp. at 186 (finding typicality satisfied for substantially the same reasons commonality was satisfied). Plaintiffs and the members of both proposed classes face the same injury: for the Recipient Class, the loss of TPS and its attendant benefits, and, for the Applicant Class, the inability to seek or receive TPS and the loss of benefits attendant to prima facie eligibility for TPS. Additional harms shared by Plaintiffs and members of both proposed classes flow from these injuries including the risk of immigrant detention and deportation and forced separation from loved ones and communities. And for both classes, the shared injury stems from the same government action—the termination of Somalia's TPS designation. *See* Alexander Doe Decl., Ex. 1 ¶¶ 22–23, 26, 32–36; Mohamed Doe Decl., Ex. 2 ¶¶ 4–6, 8–14, 22–23; Tyson Doe Decl., Ex. 3 ¶¶ 3–4, 8, 10, 15–16, 19; Nina Doe Decl., Ex. 4 ¶¶ 3–4, 15–18. Plaintiffs' claims

and those of the proposed classes stem from the same statutory and constitutional legal theories regarding the unlawfulness of Defendants' actions. Plaintiffs' claims are therefore typical of the claims of the proposed class members.

### ***D. Plaintiffs Will Adequately Represent the Interests of the Proposed Classes and Plaintiffs' Counsel Are Qualified to Litigate This Action.***

Rule 23(a)'s requirement that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), has two parts: first, Plaintiffs must show "that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews*, 780 F.2d at 130. "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).

1. Plaintiffs

The Individual Plaintiffs, as proposed class representatives, have no conflicting interests with the members of the proposed classes. Each Plaintiff has attested they will represent the interests of class members and have stated their desire to help those similarly situated to them. Alexander Doe Decl., Ex. 1 ¶¶ 39–41; Mohamed Doe Decl., Ex. 2 ¶¶ 30–32; Tyson Doe Decl., Ex. 3 ¶¶ 22–24; Nina Doe Decl., Ex. 4 ¶¶ 29–31. Plaintiffs Mohamed Doe, Tyson Doe, and Nina Doe will therefore adequately protect the interests of the Recipient Class, and Plaintiff Alexander Doe will adequately protect the interests of the Applicant Class. *See, e.g.*, *Doe v. Noem*, 778 F. Supp. 3d 311 (D. Mass. 2025), *vacated on other grounds and remanded*, 152 F.4th 272 (1st Cir. 2025) (in challenge to mass revocation of parole grants, finding adequacy where the Federal Register Notice categorically revoked parole for all individuals paroled through terminated programs and

the rationale for revocation did not depend on circumstances specific to any plaintiffs). The Associational Plaintiffs and their members similarly have no conflicting interests with the members of the proposed classes. ACT and PANA will serve as adequate representatives of both proposed classes based on their organizational mission and expertise. Kassa Decl., Ex. 5 ¶ 29; Sahid Decl., Ex. 6 ¶ 28. Associational plaintiffs with standing may serve as class representatives in suits seeking declaratory or injunctive relief. *See, e.g.*, *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 40 (1st Cir. 2009) ("[A]n association can bring a class action on behalf of its members in a case . . . that seeks class-wide injunctive or declaratory relief. After all, an association, organized for the primary purpose of protecting its members' interests, has a substantial stake in pursuing such remediation."); *Nat'l Ass'n of Deaf v. Harvard Univ.*, No. 3:15-cv-30023, 2019 WL 6699449 (D. Mass. Dec. 9, 2019) (certifying class action where plaintiffs consisted of one association and three individual plaintiffs). Furthermore, Plaintiffs seek the same declaratory and injunctive relief for themselves and for the proposed class members based on a common legal theory. *See, e.g.*, *Donelan*, 297 F.R.D. at 191 (finding adequacy where every member sought the same remedy based on an identical theory).

Finally, as with commonality and typicality, the fact that there may be variations in alternative immigration status available to the proposed class members does not defeat Plaintiffs' showing of adequacy. *See, e.g.*, *Gordon*, 300 F.R.D. at 37 (finding adequacy where class representatives were all lawful permanent residents and class members included all non-citizens, including some who may have had an alternative legal status, because such a difference did not impact analysis of legal claims); *Brito*, 395 F. Supp. 3d at 148 ("the need to answer a question of prejudice on an individual basis would not by itself defeat . . . adequacy").

2. <u>Counsel</u>

Plaintiffs' counsel are "qualified, experienced and able to vigorously conduct the proposed litigation," *Andrews*, 780 F.2d at 130, "have already devoted considerable resources into the case, and are willing to ensure that all members will be adequately represented," *Gordon*, 300 F.R.D. at 38. Counsel are deemed qualified when they have experience in the same area of law and subject matter and have previously litigated similar cases and class actions. *See, e.g.*, *Donelan*, 297 F.R.D. at 192; *Fleming*, 342 F.R.D. at 366; *Westcott*, 460 F. Supp. at 745; *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 163 (D. Mass. 2019).

Plaintiffs have retained counsel from Haitian Bridge Alliance (HBA), Legal Defense Fund (LDF), and Muslim Advocates (MA), all of whom have extensive experience in complex federal court litigation and class actions. HBA is a grassroots and community-based nonprofit organization that provides migrants and immigrants with humanitarian, legal, and social services, and also advocates for fair and human immigration policies. HBA's litigation work includes affirmative federal court litigation, which has included serving as co-counsel or as an organizational plaintiff in several cases, including in the TPS context. Crew Decl., Ex. 7 ¶¶ 5–6. LDF is the nation's first and foremost civil rights law organization, striving to secure equal justice under the law for all people in America and to break down barriers that prevent Black people in America from realizing their basic civil and human rights through litigation, advocacy, and public outreach. LDF has litigated important cases involving civil rights and immigration law for over eighty years and has served as class counsel in dozens of class actions. Mordecai Decl., Ex. 8 ¶¶ 2–3. MA is a national civil rights organization that uses litigation, policy engagement, and communications strategies to promote justice and equity while protecting the diverse spectrum of Muslim communities from

anti-Muslim discrimination in all of its forms. MA has extensive experience in the areas of immigration and constitutional law, including in three other putative class action lawsuits challenging TPS terminations. Keaney Decl., Ex. 9 ¶¶ 2–3.

Collectively, the attorneys from each of these organizations possess decades of experience and expertise in matters involving immigration and civil rights and have a demonstrated history of zealously litigating complex federal litigation and class actions such as this one. Crew Decl., Ex. 7 ¶¶ 8–10; Mordecai Decl., Ex. 8 ¶¶ 5–9; Keaney Decl., Ex. 9 ¶¶ 5–9. All counsel have invested substantial time and resources litigating this matter, including interacting with Plaintiffs, performing factual and legal research and analysis, and drafting, reviewing, and editing all pleadings in this case. Plaintiffs' counsel will continue to vigorously litigate this case and represent the interests of Plaintiffs and all proposed class members. Crew Decl., Ex. 7 ¶ 11; Mordecai Decl., Ex. 8 ¶ 4; Keaney Decl., Ex. 9 ¶ 10.

## II. The Proposed Classes Meet the Requirements of Rule 23(b)(2).

In addition to satisfying Rule 23(a), Plaintiffs must also meet one of the requirements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[C]ivil rights actions like this one, where a party charges that another has engaged in unlawful behavior towards a defined group, are 'prime examples' of Rule 23(b)(2) classes." *Donelan*, 297 F.R.D. at 193 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84

N.Y.U. L. Rev. 97, 132 (2009)). Thus, this Court has certified 23(b)(2) class actions where plaintiffs seek declaratory or injunctive relief applicable to all class members. *See, e.g.*, *McDonald v. Heckler*, 612 F. Supp. 293, 300 (D. Mass. 1985) (certifying 23(b)(2) class where "plaintiffs [sought] declaratory and injunctive relief with respect to the entire class concerning the policies of the Secretary which have been applied to each class member"); *Vara*, 2020 WL 3489679, at *21 (Rule 23(b)(2) met where "the remedies sought by plaintiffs . . . would benefit all proposed class members by ameliorating a common harm inflicted by the agency's action"). And "challenges to the interpretation of an immigration statute are typical Rule 23(b)(2) classes." *Gordon*, 300 F.R.D. at 38; *see also, e.g.*, *Guerrero Orellana*, 808 F. Supp. 3d at 187–88 (certifying 23(b)(2) class action in case involving interpretation of immigration statute).

This action meets the requirements of Rule 23(b)(2). Defendants' termination of Somalia's TPS designation constitutes an action that applies generally to the proposed classes. Plaintiffs and proposed class members seek declaratory relief declaring Defendants' termination of Somalia's TPS designation as unconstitutional and unlawful, based in part on interpretation of the TPS statute. They also seek to stay, set aside, or vacate the Termination, and to enjoin Defendants from enforcing the Termination.[2] Such relief would necessarily apply to all proposed class members because the Termination "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360.

---

[2] The relief Plaintiffs request is not barred by 8 U.S.C. § 1252(f)(1), which provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of [Title 8, Chapter 12, Subchapter II of the U.S. Code]. . . ." First, the TPS statute is codified at 8 U.S.C. § 1254a and therefore does not fall under part IV, which encompasses 8 U.S.C. §§ 1221–1232. *See CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 594–96 (D. Md. 2025) (explaining that the TPS statute is not subject to the § 1252(f)(1) bar based on the plain text of the statute, Supreme Court precedent, and the distinct functions of parts IV and V of the relevant subchapter). Second, even if § 1252(f)(1) did apply to the TPS statute, it would still not bar the relief Plaintiffs seek because "§ 1252(f)(1) does not apply to vacatur," *Texas v. United States*, 50 F.4th 498, 528 (5th Cir. 2022), nor does it apply to "agency actions that exceed the agency's statutory authority," *Nat'l TPS All.*, 830 F. Supp. 3d at 964. Finally, "section 1252(f)(1) does not strip the lower courts of the power to grant declaratory relief." *Brito v. Garland*, 22 F.4th 240, 250 n.7 (1st Cir. 2021). Thus, Rule 23(b)(2) certification is not barred.

### III. This Court Should Appoint Plaintiffs' Attorneys as Class Counsel.

Class certification requires that this Court appoint class counsel. Fed. R. Civ. P. 23(g). Under Rule 23(g), a court considers: (1) "the work counsel has done in identifying or investigating potential claims in this action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class."

As shown above and in the supporting declarations, Plaintiffs' counsel—HBA, LDF, and MA—have substantial experience in litigating constitutional and civil rights challenges to governmental action, including specifically in the area of immigration law and TPS terminations. *Supra* Sec. I.D.2. *See, e.g.*, *Donelan*, 297 F.R.D. at 194 (class counsel appointed pursuant to Rule 23(g) where counsel had done "extensive work litigating complex federal civil rights and immigrant rights cases"). Moreover, Plaintiffs' counsel have dedicated considerable resources to this litigation, including by identifying plaintiffs willing to serve as class representatives in this lawsuit despite widespread fears of retaliation among the community, preparing the Complaint and Amended Complaint, preparing multiple motions for relief, and parsing through an administrative record consisting of over 3,000 pages. Counsel will continue to devote the resources necessary to litigate this matter.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court certify the proposed classes, appoint Plaintiffs as class representatives, and appoint the undersigned attorneys as class counsel pursuant to Rule 23(g).

Dated: September 17, 2026

Respectfully submitted,

*Admitted *pro hac vice*

*/s/ Nargis Aslami*

Nargis Aslami (MA Bar Number: 714848)
Sadaf Hasan*
Melissa Keaney*
Collin Poirot*
Abbey Rutherford*
MUSLIM ADVOCATES
1032 15th Street N.W. #362,
Washington, D.C. 20005
202.897.2622
Nargis@muslimadvocates.org
Sadaf@muslimadvocates.org
Melissa@muslimadvocates.org
Collin@muslimadvocates.org
Abbey@muslimadvocates.org

*/s/ Erik Crew*
Erik Crew*
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
949.603.7411
ecrew@haitianbridge.org

*/s/ Kacey Mordecai*
Kacey Mordecai*
Mide Odunsi*
LEGAL DEFENSE FUND
700 14th Street N.W. Suite 600
Washington, D.C. 20005
202.682.1300
Kmordecai@naacpldf.org
Modunsi@naacpldf.org

Lauren Carbajal*
LEGAL DEFENSE FUND
40 Rector Street #5
New York, NY 10006
202.965.2200
lcarbajal@naacpldf.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2026, this brief will be sent electronically through this Court's CM/ECF system to all registered parties.

*/s/ Nargis Aslami*
Nargis Aslami